UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOUGLAS GAROFALO, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:19cv1587 (KAD) |
| | : | |
| DETECTIVE/SERGEANT THOMAS | : | |
| SHEEHAN, et al. | : | |
| et al., | : | |
| Defendants. | : | |

## RULING ON MOTION TO DISMISS

On October 9, 2019, the *pro se* plaintiff,[1] who is incarcerated at Brooklyn Correctional Institution, filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against Senior Assistant State's Attorney ("SASA") Christopher Parakilas; and two police officers of the Simsbury Police Department, Detective/Sergeant Thomas Sheehan and Detective Scott Sagan. Compl. [ECF No. 1]. Upon initial review, the Court permitted Plaintiff's complaint to proceed on the Fourteenth Amendment due process violation claims against Detective/Sergeant Sheehan and Detective Scott Sagan ("Defendants").[2] Initial Review Order, ECF No. 10.

Defendants Sagan and Sheehan move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1)-(3), (5)-(6) and 28 U.S.C. § 1406. However, Defendants argue only that Plaintiff has failed to state a claim for which relief can be granted, which is an argument pursued under Rule 12(b)(6). It is entirely unclear how any other provision of Rule 12(b) or 28 U.S.C. §1406 provides authority for Defendants' argument.[3] Accordingly, the Court construes the

---

[1] Plaintiff filed the filing fee on December 16, 2019.

[2] The Court dismissed the claims against SASA Parakilas on the basis of prosecutorial immunity. *Id.* at 7.

[3] Rules 12(b)(1)-(3) and (5) and Section 1406 concern dismissal for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and insufficient service of process.

motion to dismiss as brought under Rule 12(b)(6). Plaintiff has filed an opposition, asserting that Defendants acted to deprive him of the opportunity to defend his property. Pl.'s Opposition, ECF No. 16 at 2.

**STANDARD OF REVIEW**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). [D]ocuments outside the complaint are generally off-limits on a motion to dismiss," unless they are incorporated in the complaint by reference, integral to the complaint,[4]

---

[4]  A document is "integral" to the complaint where the complaint "relies heavily upon its terms and effect . . . ." C*hambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

or matters of which the Court can take judicial notice. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks and citations omitted). So too must a *pro se* litigant be able "to allege facts demonstrating that her claims arise under this Court's ... jurisdiction." *Gray v. Internal Affairs Bureau*, 292 F. Supp. 2d 475, 477 (S.D.N.Y. 2003). Absent such a showing the "complaint must be dismissed." *Id.* (citing Fed. R. Civ. P. 12(h)(3)).

**FACTUAL ALLEGATIONS**

The Court accepts the factual allegations of the complaint as true, and they are as follows. On October 5, 2015, defendants Detective/Sergeant Sheehan and Detective Sagan came to Plaintiff's residence to question him about a sexual offense.[5] ECF No. 1 at ¶ 1. He refused to answer questions without an attorney. *Id.* Later that same day, they returned to his residence to seize his 2001 Range Rover. *Id.* at ¶ 2. They did not present a warrant. *Id.* However, after he saw a flatbed pulling into his neighborhood, Plaintiff handed his keys to Detective/Sergeant Sheehan so that the situation did not become worse. *Id.* Thereafter, Detective/Sergeant Sheehan told Plaintiff and his neighbors that Plaintiff was a rapist, especially a child rapist. *Id.* On October 7, 2015, Plaintiff was arrested at his residence by Detective/Sergeant Sheehan and Detective Sagan. *Id.* at ¶ 3.

---

[5]Plaintiff alleges a date of October 5, 2016, but the Court construes the date as October 5, 2015, in light of his arrest for the sexual offense on October 7, 2015. *See Id.* at ¶ 3.

On November 12, 2015, Plaintiff was transported from Hartford Correctional Center ("HCC") to the courthouse in Enfield where he was served with an additional warrant charging him with a sex offense. *Id.* at 4. Officer Sagan commented that he was personally going to see that Plaintiff's seized vehicle was sold. *Id.* After Officer Sagan finished booking Plaintiff, he said—in a voice loud enough for almost a dozen other inmates to hear—he would see Plaintiff again with more child rape charges. *Id.* Plaintiff felt embarrassed and his safety was compromised. *Id.* Plaintiff's attorney was also furious about Detective Sagan's comments, and he assured Plaintiff that he would get his car returned when his case was resolved. *Id.*

Plaintiff was placed in a single holding cell in the courthouse for his safety, and he was later transported to the HCC in a private transport van for his safety. *Id.* He was also ushered by correctional officers to HCC's "protective custody" wing against his wishes. *Id.*

On November 3, 2017, Plaintiff was sentenced in Hartford Superior Court. *Id.* at ¶ 5. After his attorney reminded the judge about Plaintiff's seized vehicle, the judge indicated that Plaintiff should be able to get the vehicle back. *Id.*

On December 13, 2017, Plaintiff's attorney contacted the Simsbury Police Department to arrange for a family member to retrieve the vehicle. *Id.* at ¶ 6. However, unbeknownst to the Plaintiff, the vehicle had been sold after it was awarded to the Simsbury Police Department by way of a default judgment in an *in rem* forfeiture proceeding. *Id.* at ¶ 6.

In a letter dated December 8, 2015, the Asset Forfeiture Bureau notified SASA Parakilas that it would be "filing a General Statutes § 54-33g *in rem*" regarding Plaintiff's seized vehicle.*Id.* at ¶ 7, ex. A. This information was not shared with Plaintiff or his attorney. *Id.* at ¶ 7.

On February 18, 2016, a legal notice was posted in The Hartford Courant stating:

> The Superior Court has found that the persons listed below own property seized in connection with a drug offense. Pursuant to General Statutes Sec. 54-36h or 54-33g, the State of Connecticut has petitioned for forfeiture of the property. The State hereby gives notice that unless the owners appear to contest the forfeiture, the state will move the Court to enter a default and judgment, resulting in forfeiture of the property.

*Id* at ex. B. The notice provided that a hearing would be held on the State's Petition on March 11, 2016, at 10:00 a.m., at the superior court in Enfield. *Id.*

With respect to the forfeiture of money or property tied to the commission of criminal offenses, Connecticut General Statutes ("C.G.S.") § 54-33g(a) provides:

> The court shall identify the owner of such property and any other person as appears to have an interest in such property, and order the state to give notice to such owner and any interested person by certified or registered mail. The court shall promptly, but not less than two weeks after such notice, hold a hearing on the petition.

*Id.* at ¶ 8. Plaintiff never received or signed for any certified or registered mail. *Id.* And Plaintiff further alleges that throughout this time, the Defendants were aware that he was in custody and represented by counsel such that actual notice of the forfeiture could easily have been accomplished. On March 11, 2016, the court entered a default judgment with respect to the vehicle and awarded it to the Simsbury Police Department. *Id.* at ¶ 9. Plaintiff notes that the same judge handling the forfeiture hearing also signed his October 7, 2015 arrest warrant. *Id.*

In a memo dated May 20, 2016 from Detective/Sergeant Sheehan to Captain Bolter, Detective/Sergeant Sheehan represents that the Simsbury Police Department requested asset forfeiture proceedings after Plaintiff's vehicle had been seized under a valid warrant; the vehicle was awarded to the Simsbury Police Department at the

5

conclusion of asset forfeiture proceedings on March 11, 2016; and on May 20, 2016,

Detective/Sergeant Sheehan proceeded to obtain a new title for the vehicle. *Id.* at ex. G-3.

On November 23, 2016, Plaintiff's vehicle was sold to Auto-Bon Inc. *Id.* at ¶ 10. Plaintiff

also lost property that had not been properly inventoried. *Id.* at ¶ 11.

**DISCUSSION**

In its initial review order, this Court determined that Plaintiff's complaint alleges

plausible federal civil rights claims under 42 U.S.C § 1983 by alleging Defendants

Detective/Sergeant Sheehan and Detective Sagan deprived him of procedural due process as

guaranteed under the Fourteenth Amendment of the United States Constitution when they failed

to comply with the requirements of C.G.S. § 54-33g, and forfeited his vehicle. ECF No. 10 at 6.

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations

of life, liberty, or property." U.S Const. amend. XIV. To allege a violation of procedural due

process, a plaintiff must "first identify a property right, second show that the [State] has deprived

him of that right, and third show that the deprivation was effected without due process." *Local

342, Long Island Pub. Serv. Emps., UMD, ILA, AFL–CIO v. Town Bd. of Huntington*, 31 F.3d

1191, 1194 (2d Cir. 1994) (citation omitted). Accordingly, a procedural due process claim has

two elements: "(1) the existence of a property or liberty interest that was deprived and (2)

deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202,

218 (2d Cir. 2012).   In general, under the Due Process Clause "individuals must receive notice

and opportunity to be heard before the Government deprives them of property." *United States v.

James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). To determine whether a constitutional

violation has occurred, the court must consider the process provided by the State and determine

6

whether that process was constitutionally adequate. *See Zinnermon v. Burch,* 494 U.S. 113, 126, (1990).

The procedural safeguards of notice and a forfeiture hearing enumerated in C.G.S. § 54-33g are generally considered to satisfy Fourteenth Amendment due process requirements. *See Torres v. Town of Bristol,* No. 3:13-CV-1335 (SRU), 2015 WL 1442722, at *9 (D. Conn. Mar. 27, 2015) (finding notice and asset forfeiture hearing under Connecticut General Statutes § 54-36 and the right to appeal sufficient to satisfy due process). Plaintiff alleges however that Defendants did not adhere to the statute's requirements; that he received no notice of the forfeiture proceeding; and that he did not therefore have any opportunity to be heard prior to the forfeiture and sale of his vehicle.

As noted above, the court allowed Plaintiff's Fourteenth Amendment procedural due process claim to proceed against the Defendants. Oddly, the instant motion to dismiss does not address the Fourteenth Amendment claim at all. Rather, the Defendants assert that Plaintiff has failed to adequately state a claim for negligence under Connecticut state law. *See* Mot. to Dismiss at 6 (citing *Catz v. Rubenstein*, 201 Conn. 39, 44 (1986); *Calderwood v. Bender*, 189 Conn. 580, 584 (1983)). This is entirely unremarkable because Plaintiff did not attempt to bring a negligence claim under state law. And whether Plaintiff has failed to allege a duty that satisfies the standard for negligence under Connecticut state law is irrelevant to whether his allegations establish a procedural due process violation under the Fourteenth Amendment, the requirements of which are discussed above.[6]

---

[6]  To the extent the Defendants' raise the nature and scope of the Defendants' involvement in the forfeiture as a defense to the claims, those arguments may be advanced by way of summary judgment or at trial. *See, Spavone v. N.Y.State Dep't of Corr. Serv.,* 719 F.3d 127, 135 (2d Cir. 2013)(plaintiff seeking relief under §1983 must allege facts showing the defendants' personal involvement in the alleged constitutional deprivation).

**CONCLUSION**

For the foregoing reasons, the motion to dismiss (ECF No. 14) is DENIED.

**SO ORDERED** this 22nd day of May 2020, at Bridgeport, Connecticut.

/s/_____
Kari A. Dooley
United States District Judge