UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DOUGLAS GAROFALO, : | |
|     Plaintiff, : | |
| : | |
| v. : | 3:19cv1587 (KAD) |
| : | |
| DETECTIVE/SERGEANT THOMAS : | |
| SHEEHAN, et al. : | |
| et al., : | |
|     Defendants. : | |

**MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT**

On October 9, 2019, the *pro se* plaintiff, Douglas Garofalo, (hereinafter "Garofalo" or "Plaintiff"), who was formerly incarcerated within the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against Senior Assistant State's Attorney ("SASA") Christopher Parakilas, Detective/Sergeant Thomas Sheehan and Detective Scott Sagan both of the Simsbury Police Department. Compl., ECF No. 1. His complaint arises out of the seizure and subsequent forfeiture of his automobile. Upon initial review, the Court permitted Garofalo's complaint to proceed on Fourteenth Amendment due process violation claims against Detective/Sergeant Sheehan and Detective Scott Sagan ("Defendants").[1] Initial Review Order (ECF No. 10). Pending before the Court is Defendants' motion for summary judgment which was fully briefed as of May 7, 2021. For the reasons that follow, the motion for summary judgment is granted.

**STANDARD OF REVIEW**

---

[1] The Court dismissed the claims against SASA Parakilas on the basis of prosecutorial immunity. *Id.* at 7.

1

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense...." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not

2

overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## FACTUAL BACKGROUND[2]

The Defendants are employees of the Simsbury Police Department. Defs.' Rule 56(a)1 at ¶ 1. The Connecticut judicial website shows that Plaintiff was arrested and charged with sexual assault in the second degree on October 7, 2015 and sentenced on November 3, 2017.[3] *See* case detail for H14H-CR15-0169922-T available at https://www.jud2.ct.gov/crdockets. Following his arrest, he was held on bond. At the time of his arrest, the Plaintiff's 2001 Land Rover had been seized.

Thereafter, Defendant Sheehan asked the Chief State's Attorney's Office whether the Land Rover could be forfeited. The Plaintiff attached several exhibits related to the Simsbury Police Department's request for prosecution of the forfeiture against Garofalo's property to his Rule 56(a)2 statement.[4] A Simsbury Police Department "Case/Incident Report" dated November 11, 2015 signed by Sergeant Sheehan and Captain Boulter states:

> On 10/19/15 I spoke with a representative of the Asset Forfeiture Bureau of the Chief State's Attorney's Office in regards to this Incident. I inquired if the Simsbury Police Department could request Asset Forfeiture Proceedings for the 2001 Land Rover that was used during the commission of this crime. They confirmed that based on C.G.S. [§] 54-33g, the proceedings could be initiated by this department.

Pl.'s ex. C (ECF No. 38 at 33). A Forfeiture Notice form for the Simsbury Police Department to request the Connecticut Division of Criminal Justice to prosecute the forfeiture against

---

[2] The relevant facts are taken from the Defendants' Local Rule 56(a)1 Statement with attached exhibits ("Def.'s Rule 56(a)1") (ECF No. 32-3); and Plaintiff's Local Rule 56(a)2 Statement ("Plf.'s Rule 56(a)2") (ECF No. 38) with attached exhibits. All of the facts set forth herein are undisputed unless otherwise indicated.
[3] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).
[4] Defendants do not contest the authenticity of these documents.

3

Garofalo's Range Rover lists Sergeant Sheehan as the contact and indicates Garofalo's address as 20 Selma Court in Simsbury, Connecticut. Pl.'s ex. H (ECF 38 at 38). A Vehicle Information Form for submission to the Asset Forfeiture Bureau of the Chief State's Attorney Office lists Detective Sagan as the police department contact officer, describes Garofalo's Range Rover, and lists Garofalo's address as 20 Selma Court in Simsbury, Connecticut. Pl.'s ex. I (ECF No. 38 at 39).

The State of Connecticut Asset Forfeiture Bureau filed an *In Rem* Petition for Disposition of Seized Property on December 30, 2015. Defs.' Rule 56(a)1 at ¶ 6; *see* Defs.' ex. D (In Rem Petition of Seized Property) (ECF No. 32-3 at 36). Thereafter, the Connecticut Superior Court issued a Finding of Ownership & Order for Notification and Hearing Date that ordered "the State to give notice" to Garofalo "by certified mail" that a January 29, 2016 hearing would be held on the *in rem* Petition. *Id.* at ¶ 7; Defs.' ex. E (ECF No. 32-3 at 41).

The State sent the notice (postmarked January 12, 2016) by certified mail, to "Douglas Garofalo, 20 Selma Court, Weatogue, CT 06089," which notice was returned to sender as "Unclaimed" and "Unable to Forward." Defs.' Rule 56(a)1 at ¶ 9; Defs.' ex. F (ECF No. 32-3 at 47-48). The Connecticut Superior Court approved the State's request to continue the forfeiture proceeding until after notice by publication because the notice by certified mail had been unsuccessful. Pl.'s ex. P (ECF No. 38 at 53). Throughout this time, Plaintiff remained incarcerated.

Notice was thereafter published in the Hartford Courant on February 18, 2016. Defs.' Rule 56(a)1 at ¶ 10.[5] The notice stated:

---

[5] Garofalo responds that he was in prison at the time this notice was published and had no access to the newspaper. Pl.'s Rule 56(a)2 at ¶ 10.

> The Superior Court has found that the persons listed below own property seized in connection with a drug offense. Pursuant to General Statutes Sec. 54-36h or 54-33g, the State of Connecticut has petitioned for forfeiture of the property. The State hereby gives notice that unless the owners appear to contest the forfeiture, the State will move the Court to enter a default and judgment, resulting in forfeiture of the property.
>
> The Court has ordered a hearing on the State's Petition for March 11, 2016, at 10 a.m., at the Superior Court, G.A. 13, 111 Phoenix Avenue, Enfield, Connecticut, 06082.

Defs.' ex. G (ECF No. 32-3 at 52).

On March 11, 2016, the Connecticut Superior Court entered "a default and a judgment" of forfeiture and awarded Garofalo's Range Rover to the Simsbury Police Department. Defs.' Rule 56(a)1 at ¶ 11.

At Garofalo's sentencing hearing on November 3, 2017, the presiding Judge stated that the vehicle "can be returned" to him if it had been seized "and is being held."  Pl.'s ex. J. (ECF No. 38 at 41. Although a prosecutor had been advised of the forfeiture proceedings, it does not appear from the transcript of the proceeding that the prosecutor present was aware of or advised the judge that the Plaintiff's vehicle had been forfeited and could not be returned.

In an affidavit, Garofalo's criminal attorney, John O'Brien, avers that after the sentencing hearing, he telephoned the Simsbury Police to make arrangements for the release and return of the vehicle but was informed that the vehicle had been disposed of by sale at an auction more than a year earlier after it had been ordered forfeited by the state court. Pl.'s ex. K, O'Brien Aff. at ¶ 9 (ECF No. 38 at 44). Garofalo avers that he learned that his vehicle had been awarded to the Simsbury Police Department on December 13, 2017. Pl.'s declar. (ECF No. 38 at 31).

**DISCUSSION**

In its initial review order, the Court construed Garofalo's complaint that he did not receive any notice from the Defendants that his vehicle was the subject of forfeiture proceedings

5

as stating a Fourteenth Amendment procedural due process violation. Initial Review Order (ECF No. 10 at 6).

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S Const. amend. XIV. To allege a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [State] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL–CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted). A procedural due process claim has two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). In general, under the Due Process Clause "individuals must receive notice and opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). Notice is reasonable if it is "calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted). To determine whether a constitutional violation has occurred, the court must consider the process provided by the State and determine whether that process was constitutionally adequate. *See Zinnermon v. Burch,* 494 U.S. 113, 126, (1990).

Here, Plaintiff clearly had a property interest in his vehicle. The question then is whether the Defendants afforded him the due process constitutionally required before depriving him of that interest.

Of primary importance in answering this question is that "in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020). In other words, even if Plaintiff did not receive adequate notice prior to the forfeiture of his vehicle, the Defendants must have been involved in and responsible for that failure. Here, as discussed below, the evidentiary record and the relevant statutory scheme set forth under Section 54-33g(a) demonstrate that Defendants Sheehan and Sagan had no (and could not have) direct personal involvement in the failure to provide adequate notice of the forfeiture proceeding to Garofalo.

!    With respect to the forfeiture of money or property tied to the commission of criminal offenses, Connecticut General Statutes 54-33g(a) provided, relevant part:

> When any property believed to be possessed, controlled, designed or intended for use or which is or has been used or which may be used as a means of committing any criminal offense, or which constitutes the proceeds of the commission of any criminal offense, except a violation of section 21a-267, 21a-277, 21a-278 or 21a-279, has been seized as a result of a lawful arrest or lawful search, which the state claims to be a nuisance and desires to have destroyed or disposed of in accordance with the provisions of this section, the Chief State's Attorney or a deputy chief state's attorney, state's attorney or assistant or deputy assistant state's attorney may petition the court not later than ninety days after the seizure, in the nature of a proceeding in rem, to order forfeiture of such property. Such proceeding shall be deemed a civil suit in equity, in which the state shall have the burden of proving all material facts by clear and convincing evidence. The court shall identify the owner of such property and any other person as appears to have an interest in such property and order the state to give notice to such owner and any interested person by certified or registered mail. The court shall promptly, but not less than two weeks after such notice, hold a hearing on the petition.

Conn. Gen. Stat. Ann. § 54-33g (West) (effective October 1, 2014 to September 30, 2017).

By its plain meaning,[6] the "state" makes the determination as to whether to seek forfeiture.[7] And if such a determination is made, as it was here, the statute authorizes only the Chief State's Attorney, the deputy chief state's attorney, a state's attorney or assistant or deputy state's attorney to initiate forfeiture proceedings. The statute then requires "the court" to order "the state" to give notice consistent with the statutes' provisions. Here, consistent with the statute's requirements, the Asset Forfeiture Bureau of the Chief State's Attorney's office initiated and prosecuted the forfeiture proceeding of Plaintiff's vehicle. And it was the Asset Forfeiture Bureau of the Chief State's Attorney's office that first sent notice by certified mail to the Plaintiff's pre-incarceration address and thereafter published notice in the newspaper, in each case acting upon court order.[8]

---

[6] The Connecticut Supreme Court has set forth the general principles of statutory construction:

> When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.... In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply.... In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.

*Rutter v. Janis*, 334 Conn. 722, 730 (2020) (quoting *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45–46 (2019).

[7] In this vein, Garofalo argues that the vehicle was not subject to forfeiture at all under the statute and the Defendants deceived the Asset Forfeiture Bureau into believing otherwise. First, this claim appears nowhere in the Complaint. Notwithstanding, per the statute, it is the state which ascertains the applicability of the statute; the state that bears the burden of proof and the state that ultimately is responsible for compliance with the statute. This untimely argument, therefore, fares no better than the procedural due process claim.

[8] It is further worth noting that the legislative history of Section 54-33g(a) reflects that the legislature intended to (and did) eliminate any role of a municipal police officer in providing property owners with notice of a forfeiture. Public Act No. 14-233 (effective on October 1, 2014) amended 54-33(g) by removing a provision that permitted a local or state police officer to serve a notice summons and instead required the "state to give notice" to the property owner. *See* CRIMES AND OFFENSES—OMNIBUS AMENDMENTS, 2014 Conn. Legis. Serv. P.A. 14-233 (H.B. 5586) (WEST). Accordingly, the legislative history reveals that the statute's reference to "the state" contemplates only action by those acting through agency of the State of Connecticut.

Accordingly, the named Defendants had no involvement, or even the statutory authority to become involved, in the manner and means of providing notice to the Plaintiff of the forfeiture proceedings. To be clear, this is not to say that a police officer could never be personally involved in a due process violation stemming from the forfeiture of seized property, as the requirements of due process are not themselves defined by the statute. But on the specific facts of this case, where the Defendants only requested that the forfeiture proceedings be considered and initiated, and thereafter had no role in that process, the personal involvement requirement of a §1983 claim is not satisfied.

Garofalo counters that the State should have been on notice that Garofalo was in prison and that, as an incarcerated individual, he had no access to notice published in a newspaper. *See* Pl's Mem. at 6 (ECF No. 38); Pl.'s Rule 56(a)2 at ¶ 8 (ECF No. 38). The Court first observes that the circumstances of this case raise questions as to the equity of the state's conduct. For example, although the Asset Forfeiture Bureau had notified the prosecutor as to the initiation of forfeiture proceedings, the prosecutor did not in turn advise the Plaintiff, his attorney or the court of same. And certainly, the Asset Forfeiture Bureau was aware of the pendency of the criminal charges and could have ascertained that the Plaintiff was incarcerated and could have, itself, notified the Plaintiff through his attorney. It did not do so and instead chose to simply notify the prosecutor. So although notice under these circumstances may well comport with constitutional mandates, *see, Torres v. Town of Bristol*, No. 3:13-CV-1335 (SRU), 2015 WL 1442722, at *9 (D. Conn. Mar. 27, 2015) (finding notice and asset forfeiture hearing under Connecticut General Statutes § 54-36 and the right to appeal sufficient to satisfy due process), it seems to the Court that when there are available options for giving actual notice, the better practice would be to

choose those options. Ultimately however, whether the State Asset Forfeiture Bureau's complied with due process standards is not at issue because the named defendants in this case are Simsbury Police Department officers Sheehan and Sagan.

Garofalo also asserts that the Asset Forfeiture Bureau was "commissioned" by the Simsbury Police Department to prosecute the forfeiture against Garofalo's property and that the Asset Forfeiture Bureau was "acting on behalf of the defendants' material misrepresentations[.]" Pl.'s Opp. at 5-6 (ECF No. 38). Defendants did submit documents to the Asset Forfeiture Bureau to request forfeiture of Garofalo's vehicle identifying Plaintiff's address as 20 Selma Court in Simsbury, Connecticut. But as the court transcript shows, the Connecticut Superior Court approved the State's request to continue the forfeiture proceeding until additional attempts to provide notice by publication were made in light of the unsuccessful notice by certified mail. Pl.'s ex. P (ECF No. 38 at 53). Again, there is no evidence that either Defendant Sheehan or Sagan had any role in the Asset Forfeiture Bureau's decision on how to provide reasonable notice to Garofalo once certified mail was unsuccessful. Nor is there any indication that Defendants intentionally misrepresented Garofalo's address as the record is clear that the vehicle was seized at the address listed.[9]

Finally, even if Defendants could be considered to be have personal involvement in a due process violation by requesting the vehicle's forfeiture and/or by providing forms listing Garofalo's address at 20 Selma Court, Simsbury, CT 06089, Defendants are still shielded from damages by qualified immunity.

---

[9] The Plaintiff does not assert that this was not his residence at the time of his arrest and acknowledges in his complaint that the defendants were at his residence on two separate occasions – once during the investigation at which point the Land Rover was seized, and once to effectuate his arrest. Rather, he relies upon the fact of his incarceration as rendering this address unreasonable and deceptive.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). The Court has discretion to determine the order in which it will address the inquiries required when assessing the applicability of qualified immunity. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson*, 555 U.S. at 236).

A right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

In addition, qualified immunity protects state actors when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right. *Manganiello*

11

*v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010). "If a reasonable officer might not have known for certain that the conduct was unlawful – then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). Therefore, the question this Court first asks is whether it was objectively reasonable for any of the defendants to believe their conduct was not unlawful at the time. *Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015).

Here, the statutory scheme places the responsibility for deciding whether to initiate asset forfeiture and the conduct of asset forfeiture proceedings thereafter with the state, here the Asset Forfeiture Bureau. Thus, it was objectively reasonable for Defendants to rely upon the Asset Forfeiture Bureau to assess the case and undertake the forfeiture in compliance with due process standards. For the same reason, it was also objectively reasonable for Defendants to believe that they had did not violate Garofalo's Fourteenth Amendment rights by making a request for the Asset Forfeiture Bureau to pursue the forfeiture of Garofalo's property and by sending forms listing Garofalo's address as 20 Selma Court. *See Gardiner v. Inc. Vill. of Endicott*, 50 F.3d 151, 156 (2d Cir. 1995) (noting "it is essential that police officers and school officials can rely on each other" and therefore it was "objectively reasonable for police officers to rely on the representations of a school official that a parent has consented to the removal of a child from school without conducting an independent inquiry, absent unusual circumstances that would warrant such inquiry."). Accordingly, Defendants' motion for summary judgment may also be granted in Defendants' favor on the basis of qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for summary judgment (ECF No. 32). The clerk is instructed to close this case.

**SO ORDERED** this 2nd day of August 2021, at Bridgeport, Connecticut.

                                                  /s/
                                            Kari A. Dooley
                                            United States District Judge